IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| CASEY INDUSTRIAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:06cv249(JCC) |
| ) | |
| SEABOARD SURETY CO., ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the Court will deny Defendant's motion to dismiss.

**I.   Background**

Plaintiff Casey Industrial, Inc. ("Casey") has filed this action upon a Payment Bond issued by Defendant Seaboard Surety Company ("Seaboard") in favor of Ragnar Benson, Inc. ("RBI").  RBI, a general contractor, entered into a contract with Marsh Run Generation, LLC[1] for the construction of an electrical power generation facility in Remington, Virginia.  RBI then retained Casey as a subcontractor in two separate subcontracts for concrete construction services and underground electrical work.  Seaboard, as surety, issued a Payment Bond on behalf of

---

[1] Effective April 30, 2003, Marsh Run Generation transferred all of its assets to Old Dominion Electric Cooperative ("ODEC"), which became the new owner of the project and the party under contract with RBI.

RBI, as principal, for the protection and payment of subcontractors working on the project.

According to the allegations of Casey's complaint, Casey performed its services under the two subcontracts in a timely, workmanlike manner. Casey also performed additional work beyond the scope of the subcontracts and gave proper notice of claims for compensation. Nevertheless, Casey did not receive payment in full for the work it performed at the project. On February 10, 2006, Casey filed a two-count complaint against Seaboard in the Circuit Court for Fauquier County, claiming breaches of contract and asserting a quantum meruit theory in the alternative. Seaboard promptly removed the action to this Court. Seaboard has moved to dismiss the action,[2] arguing that Casey's claim is time-barred by the terms of the Payment Bond. This motion is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De

---

[2] Seaboard has attached to its motion to dismiss the declaration of Mary Alice McNamara, a Claims Attorney employed by Seaboard. McNamara's declaration asserts several facts that exceed the scope of Casey's complaint. Furthermore, this declaration forms the basis for Seaboard's argument that the claim is time-barred. The Court will thus consider Seaboard's motion to be one for summary judgment. *See* Fed. R. Civ. P. 12(b).

-2-

*Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

Where "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion may be converted to a motion for summary judgment.  Fed. R. Civ. P. 12(b).  In such an instance, the court is required to give all parties "reasonable opportunity to present all material made pertinent to such motion by Rule 56."  Fed. R. Civ. P. 12(b); *see also Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976).  According to the Fourth Circuit, "'reasonable opportunity' includes 'some indication by the court to all parties that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or to pursue reasonable discovery." *Plante*, 540 F.2d at 1235 (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)).

### III.  Analysis

Seaboard's argument that Casey's claim is time-barred is based on the following provision of the Payment Bond:

> No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or *(2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs.*

(Compl. Ex. C, ¶ 11 (emphasis added).)  The parties agree that the term "Construction Contract" referred to the construction contract between Marsh Run Generation/ODEC and RBI.  McNamara's declaration asserts that on December 26, 2004, ODEC terminated its Construction Contract with RBI due to RBI's default.  According to McNamara, neither RBI nor its subcontractors performed any work at the project site under the RBI Construction Contract after December 23, 2004.  Under this view of events, Casey would have had until December 23, 2005 to file an action for payment under the Payment Bond.  Because Casey did not file the instant action until February 10, 2006, Seaboard argues that the action must be dismissed.

It is undisputed that Casey demobilized from the project site in May 2004.  After ODEC terminated its contract with RBI in December 2004, Seaboard entered into a Takeover Agreement with ODEC to provide for the completion of the project.

Virginia Building & Structures, Inc. ("VBS"), the completion contractor retained by Seaboard, subsequently contacted Casey regarding the completion of corrective work at the project site, which Casey performed in August 2005. The primary question before the Court is therefore whether Casey's August 2005 performance constituted work "under the Construction Contract," as contemplated by Paragraph 11 of the Payment Bond. If Casey's August 2005 work was performed under the RBI Construction Contract, then its suit is timely filed.

Seaboard's argument is that work could not be performed under the RBI Construction Contract after ODEC terminated that contract. According to Seaboard, Casey's subsequent work on the project was performed under a separate, independent agreement. Seaboard points to the fact that it was not an original party to the RBI Construction Contract. Rather, Seaboard became obligated to ensure completion of the Construction Contract by way of its Performance Bond. *See Int'l Fid. Ins. Co. v. County of Rockland*, 98 F. Supp. 2d 400, 424 (S.D.N.Y. 2000) ("If . . . the surety undertakes to complete the contract itself, the new relationship between the surety and the owner will be governed by the new contract or takeover agreement, with the former surety now acting directly as the new contractor."). Because Seaboard's Performance Bond obligated it to procure corrective work by

Casey, Seaboard argues that Casey's August 2005 work was performed under its independent Takeover Agreement with ODEC.

While subsequent discovery may prove Seaboard's theory of the case correct, the Court finds that summary judgment for Seaboard is inappropriate at this juncture.  Casey has submitted an affidavit from one of its vice presidents, Patrick Krum. According to Krum, VBS contacted Casey on June 17, 2005 and gave Casey notice to proceed with work at the Marsh Run Generation project.  (Pl.'s Opp'n Ex. 1 ¶ 9.)  Because VBS never provided Casey with a new subcontractor agreement, Casey interpreted the notice as a demand that Casey complete its obligations under its original subcontracts with RBI.  (*Id.* ¶ 10.)  Seaboard and VBS arguably had the authority to make such a demand.[3]  The Court notes that some of RBI's subcontractors returned to work on the project after entering into separate "Subcontractor-Hold Agreements" with Seaboard.  Had Casey done so, its August 2005 work on the project would not have been under the RBI Construction Contract.  As there is no evidence of this, however, and because the record is unclear as to whether Seaboard and VBS

---

[3] Under the terms of the Performance Bond, Seaboard and RBI jointly obligated themselves to performance under the RBI Construction Contract, which was incorporated by reference into the Performance Bond.  (*See* Pl.'s Opp'n Ex. 2, Attach. A, ¶ 1.)  Further, by virtue of its Takeover Agreement, Seaboard became "entitled to all rights, title and interest of EPC Contractor [RBI] in and to the EPC Contract in all respects as if Surety were the original party to the EPC Contract."  (Pl.'s Opp'n Ex. 2, Attach. C, ¶ 2.)  Thus, although Seaboard was not a party to Casey's subcontract, Seaboard arguably gained the right to insist upon Casey's performance of its subcontract obligations.

insisted on Casey's compliance under its original subcontract, summary judgment for Seaboard is inappropriate.

Casey argues that the Court can declare as a matter of law that its August 2005 work was performed under the RBI Construction Contract because the additional work was performed to complete Casey's obligations under its subcontracts with RBI. In *American Surety Co. of New York v. Zoby*, 130 S.E.2d 587 (Va. 1963), the Virginia Supreme Court held that the time period for a claim for payment under a construction bond runs from the contractor's completion of additional work where the additional work was done "in good faith, at the request of the owner and for the purpose of fully completing his contract according to its terms." *Id.* at 590. Casey argues, and Seaboard does not dispute, that the August 2005 work was done in good faith and at the request of the owner. It is unclear, however, whether Casey's August 2005 work was "for the purpose of fully completing [its] contract according to its terms." *Am. Surety Co. of New York*, 130 S.E.2d at 590.

According to Patrick Krum's first declaration, when Casey demobilized in May 2004, it left unfinished work that was required by the RBI Construction Contract and that could only be completed after other trades had finished their responsibilities. (*See* Pl.'s Opp'n Ex. 1 ¶ 6.) Seaboard, on the other hand, has offered contradictory statements made by Casey in a Request for

Equitable Adjustment ("REA") submitted to RBI on September 28, 2005.  In the REA, Casey stated:

> Prior to leaving the jobsite in May of 2004, Casey completed its work in accordance with the contract documents and RBI's direction.  Casey made a good faith effort to review its work with RBI in order to address any potential punchlist items before leaving the site.  Although RBI was not cooperative in this process; *Casey did complete a thorough examination of its work and determined its contractual responsibilities were complete*.
>
> Subsequent to Casey's demobilization, RBI was terminated by ODEC.  In June of 2005, Casey was directed by the contractor that took over for RBI (VB&S) to perform additional work in the form of punch list requests.  These requests came 13 months after Casey completed its work and demobilized from the jobsite.  *Casey disputes the legitimacy of these punch list items.  Casey is not responsible for the work directed by VB&S and requests compensation for the labor and materials that were required to perform the additional work*.

(Def.'s Reply, Ex. A at 13 (emphasis added).)

In a second declaration, Krum testifies that Casey took this position in the REA only because RBI refused to review Casey's work at the time of its demobilization.  (Pl.'s Surreply Ex. 1 ¶ 8.)  According to Krum, it was necessary for Casey to take the position that its contractual work was complete so that Casey would have a defense in the event RBI subsequently attempted to assign additional work in alteration of Casey's contractual responsibilities.  (*Id.* ¶¶ 8-9.)  Thus, the parties dispute whether the work performed by Casey in August 2005 was necessary for the completion of Casey's responsibilities under

its subcontracts with RBI.  In light of this disputed issue of material fact, summary judgment is inappropriate.

### IV.  Conclusion

For the foregoing reasons, the Court will deny Defendant's motion to dismiss.  An appropriate Order will issue.

April 20, 2006                          _____/s/_____
Alexandria, Virginia                             James C. Cacheris
                                        UNITED STATES DISTRICT COURT JUDGE