```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA

                          Alexandria Division

CASEY INDUSTRIAL, INC.,        )
                               )
          Plaintiff,           )
                               )
     v.                        )     1:06cv249(JCC)
                               )
SEABOARD SURETY CO.,           )
                               )
          Defendant.           )
```

## **M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiff's motion to dismiss Count III of Defendant's counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Court will grant Plaintiff's motion to dismiss.

### I.   Background

On February 10, 2006, Plaintiff Casey Industrial, Inc. ("Casey") filed this action against Defendant Seaboard Surety Company ("Seaboard") in the Circuit Court for Fauquier County. Seaboard removed the action to this Court and immediately filed a motion to dismiss Casey's complaint in its entirety. Construing Seaboard's motion as one for summary judgment, the Court denied the motion on April 20, 2006. Thereafter, on May 4, 2006, Seaboard filed an answer to Casey's complaint and asserted a counterclaim.

The relevant facts, as alleged in Seaboard's counterclaim, are as follows: Ragnar Benson, Inc. ("RBI")

entered into an Engineer-Procure-Construct contract (the "EPC Contract") with Marsh Run Generation, LLC ("Marsh Run") for the construction of a project known as the Marsh Run Generation Facility (the "Project").[1]  On December 16, 2002, Seaboard issued performance and payment bonds for RBI in connection with the Project for the principal amount of $46,832,700.00.  Seaboard provided these bonds to RBI pursuant to a General Agreement of Indemnity ("GAI") that assigned to Seaboard all of RBI's rights and obligations in the EPC contract in the event that the obligee declared RBI in default.

RBI retained Casey as a subcontractor to perform two separate subcontracts, dated May 30, 2003 and July 22, 2003, for concrete construction services and underground electrical work.  In May 2004, Casey demobilized from the Project, claiming that it had completed its work under both subcontracts.  Thereafter, ODEC placed RBI in default under the EPC Contract and gave notice of its intent to terminate the EPC Contract for default.  On or about December 23, 2004, ODEC terminated the EPC Contract and made a demand upon Seaboard to complete the Project, pursuant to the performance bond.  Seaboard and ODEC subsequently entered into a Takeover Agreement providing that Seaboard was the

---

[1] On or about April 30, 2003, Marsh Run dissolved and Old Dominion Electric Cooperative ("ODEC") assumed all of Marsh Run's rights and responsibilities under the EPC contract.

"Contractor" and was required to complete the EPC Contract in discharge of its obligation under the performance bond.

Seaboard alleges that the terms of the GAI and the Takeover Agreement entitle it to all the rights and defenses of RBI, including RBI's rights with respect to the Casey Subcontracts. Seaboard's three-count counterclaim in this matter asserts claims against Casey for breach of contract ("Count I"), breach of warranty ("Count II"), and liquidated damages for delay ("Count III"). On May 22, 2006, Casey filed a motion to dismiss Count III of the counterclaim. This motion is currently before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be

assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

### III.  Analysis

The EPC Contract provides for liquidated damages in the event that substantial completion of any unit of the EPC Contract does not occur by the scheduled substantial completion date. In the event of this occurrence, the EPC Contract requires the Contractor to pay the sum of $15,000 per day as liquidated damages. Count III of Seaboard's counterclaim is based on this portion of the EPC Contract and alleges that Casey's subcontracts incorporate, among other things, the EPC Contract's liquidated damages provision. Seaboard alleges that Casey failed to timely complete its work under its subcontracts, thereby delaying substantial completion of the EPC Contract. Seaboard further alleges that as a result of Casey's failure to timely complete its work, ODEC has filed separate actions against RBI and Seaboard seeking to recover liquidated damages. Count III claims that Casey is liable to Seaboard for liquidated damages to the extent that Seaboard is liable to ODEC for liquidated damages associated with Casey's delays on the Project.

In its motion to dismiss, Casey argues that Seaboard's allegations are contradicted by the plain terms of Casey's subcontracts. Casey maintains that addendums to both of its

subcontracts expressly exclude the terms of the EPC Contract from the subcontracts.  As such, Casey claims that Seaboard may not assert a claim against it for liquidated damages.

Casey's argument is based on the deletion of Article 21 from both subcontracts.  Article 21 was entitled "Agreement with Owner" and provided

> Subcontractor shall have the same duties and obligations to Contractor as Contractor has to Owner. This shall include all general and special conditions, drawings and specifications, and rules and regulations. To the extent that Owner's Agreement imposes greater obligations and responsibilities upon Contractor with respect to performance of the Work than does this Subcontract, then Owner's Agreement shall govern.
>
> By executing this Subcontract, Subcontractor warrants and represents that it has reviewed Owner's Agreement.

(Compl., Ex. A, Art. 21; Ex. B, Art. 21.)  Addendum A to both subcontracts deleted Article 21 in its entirety from each subcontract.  (*See, e.g.*, *id.*, Ex. A, Addendum A, at 5.)  Based on this deletion, Casey argues that it "has no contractual obligation to Seaboard for any alleged delay damages that may arise out of the EPC Contract."  (Pl.'s Mem., at 4.)

The Court agrees, but only to the extent that Casey's argument relates to liquidated damages.  A review of Casey's subcontracts reveals that the agreements obligated Casey to perform its work in accordance with the EPC Contract[2] and RBI's

---

[2] In the event of any conflicts between the EPC Contract and either of Casey's subcontracts, however, both subcontracts provide that the subcontracts govern.  (*See* Compl., Ex. A, at 2; Compl., Ex. B, at 2.)

completion schedule.  (*See*, *e.g.*, Compl., Ex. A, Art. 1, Art. 5(a), Art. 5(h).)  Nevertheless, neither subcontract contains any language giving rise to liability for liquidated damages in the event of a delay.  Article 21 to each subcontract, the incorporation clause, would have permitted liquidated damages pursuant to the terms of the EPC Contract, but the parties intentionally deleted those clauses.

In light of other provisions in the subcontract, however, the Court cannot agree with Casey's absolutist position.  For instance, Article 12 of the subcontracts clearly contemplates that the Contractor would have remedies other than liquidated damages in the event of Seaboard's delay:

> (a) If Subcontractor . . . should refuse or fail, except in cases for which extension of time is provided, to supply enough properly skilled workmen or property materials . . . *or fails in any respect to prosecute the work with promptness and diligence* . . . Contractor may, at its option and sole discretion, after forty-eight (48) hours written notice to Subcontractor, and if the Subcontractor fails to provide and [sic] adequate remedy plan, and without prejudice to any other rights or remedies, have the right to any or all of the following remedies: (1) provide any such labor or materials, and deduct the cost thereof from any money then due or thereafter to become due to Subcontractor under this Subcontract; (2) terminate the employment of Subcontractor for the said work and terminate this Subcontract; . . . .
>
> (b) In any such case of such termination of Subcontract or discontinuance of the employment, Subcontractor shall not be entitled to receive any further payment under this Subcontract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the expenses incurred by Contractor in finishing

>     the Work, including reasonable overhead, profit and
>     attorneys fees, and all other charges, expense or
>     damage, such excess shall be paid by Contractor to
>     Subcontractor; but if such charges, expense or damage
>     shall exceed such unpaid balance, Subcontractor shall
>     pay the difference to Contractor.

(*See, e.g.*, Compl., Ex. A, Art. 12 (emphasis added).) Accordingly, while the Court will grant Casey's motion to dismiss Seaboard's claim for liquidated damages, Seaboard will have leave to amend its counterclaim to seek actual damages.

Casey also seeks to preclude Seaboard from amending its counterclaim at a subsequent date to seek indemnification or contribution for any liquidated damages judgment obtained by ODEC against Seaboard. As the Court has already determined that Casey is not subject to liability for liquidated damages, it is unnecessary to reach this aspect of Casey's motion.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion to dismiss. An appropriate Order will issue.


July 27, 2006                        _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE