```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA

                        Alexandria Division

CASEY INDUSTRIAL, INC.         )
                               )
        Plaintiff,             )
                               )
        v.                     )    1:06cv249(JCC)
                               )
SEABOARD SURETY CO.            )
                               )
        Respondent.            )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff's motion for partial summary judgment, Defendant's cross-motion for partial summary judgment, and Defendant's motion to disqualify plaintiff's expert. For the reasons stated below, the Court will grant Plaintiff's motion in part, and deny the motion in part; deny Defendant's cross-motion for summary judgment, and deny Defendant's motion to disqualify the expert.

### **I. Background**

Plaintiff Casey Industrial, Inc. ("Casey") has filed this action upon a payment bond issued by Defendant Seaboard Surety Company ("Seaboard") in favor of Ragnar Benson, Inc. ("RBI"). RBI, a general contractor, entered into a contract with

Marsh Run Generation, LLC[1] for the construction of an electrical power generation facility in Remington, Virginia.  RBI then retained Casey as a subcontractor in two separate subcontracts for concrete construction services and underground electrical work.  Seaboard, as surety, issued a payment bond on behalf of RBI, as principal, for the protection and payment of subcontractors working on the project.

According to the allegations of Casey's complaint, Case performed its services under the two subcontracts in a timely, workmanlike manner.  Casey also performed additional work beyond the scope of the subcontracts and gave proper notice of claims for compensation.  Nevertheless, Casey did not receive payment in full for the work it performed at the project.  On February 10, 2006, Casey filed a two-count complaint against Seaboard in the Circuit Court for Fauquier County, claiming breaches of contract and asserting a quantum meruit theory in the alternative.  Seaboard promptly removed the action to this Court.

As alleged by Casey, the claim arose from various delays that occurred at the fault of RBI, including failure to install the drainage system and access road, which led to Casey's demobilization in May 2004.  At that time, Casey still had work remaining on the project, but on December 23, 2004, ODEC

---

[1] Effective April 30, 2003, Marsh Run Generation transferred all of its assets to Old Dominion Electric Cooperative ("ODEC"), which became the new owner of the project and the party under contract with RBI.

2

terminated the general contract with RBI and placed Seaboard on notice of its obligations to complete the contract pursuant to Seaboard's Performance Bond.  Seaboard entered into a takeover agreement with ODEC.  Virginia Building & Structures ("VBS"), the completion contractor retained by Seaboard, demanded Casey's return to the job to fulfill its subcontract obligations and initially demanded that Casey sign a new subcontractor hold agreement.  Casey never signed the agreement, but did return to the job.  VBS requested that Teton Industrial ("Teton") return to the job as well, which Teton did in July of 2005.

During the course of Casey's performance, Casey informed RBI of increased costs, claims, and delays, and prepared a claim for RBI to present to ODEC regarding excavation of rock. Casey also provided Seaboard with a notice of a claim under the Payment Bond on June 9, 2004.  On September 20, 2005, Casey presented a Request for Equitable Adjustment ("REA") cataloguing the historical claims and presenting Casey's overall requested adjustment.  Seaboard returned a letter on November 4, 2005 rejecting the claim.

ODEC filed suit against RBI, and RBI filed for Chapter 11 Bankruptcy on October 14, 2005, during a bench trial.  On October 16, 2005 ODEC also filed suit against Seaboard in the same court, and the suit was stayed on April 18, 2006, pending the outcome of the action against RBI.  On August 4, 2006, Judge

James Spencer of the United States District Court for the Eastern District of VA issued a 107-page Findings of Fact and Conclusions of Law ("ODEC Order").

On August 25, 2006, Plaintiff filed a motion for partial summary judgment on (1) waiver of defenses not included in Defendant's November 2005 response letter; (2) timeliness of suit; (3) collateral estoppel; (4) defenses pursuant to Article 5(g) of the subcontract; (5) lack of notice defense; and (6) Defendant's new arguments for damages.  On September 8, 2006, Defendant filed a cross-motion for summary judgment on (1) timeliness of suit; and (2) defenses pursuant to Article 5(g) of the subcontract.

On September 11, 2006, Defendant filed a motion to disqualify Plaintiff's expert, Michael Jaspers, on the grounds that he is employed by Navigant Consuluting, a company formerly retained by RBI.  Defendant alleges that Navigant Consulting was in a confidential relationship with RBI (Seaboard's principal), and received confidential information related to the litigation between Seaboard and Casey.  Defendant argues that because Mr. Jaspers is employed by Navigant and RBI is in privity with its surety Seaboard, Mr. Jaspers should be disqualified as an expert witness.  All of these motions and cross-motions are before the Court.

## II.  Standard of Review

A.  Summary Judgment

As set forth in Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56 mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party is not entitled to summary judgment if there is a genuine issue of material fact in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of fact exists if a reasonable jury could return a verdict for a nonmoving party.  *See id.*  In other words, summary judgment appropriately lies only if there can be but one reasonable conclusion as to the verdict.  *See id.*  As the Fourth Circuit explained,

> [W]e must draw any permissible inference from the  underlying  facts  in  the  light  most favorable  to  the  party  opposing  the  motion.

> Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove.

*Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992) (citations omitted), *abrogated on other grounds in Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

    B.  <u>Disqualification of an Expert Witness</u>

Federal courts have the discretionary power to disqualify expert witnesses in certain circumstances. *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1248 (E.D. Va. 1991). Virginia has adopted a two-prong test to determine whether to disqualify an expert witness, based on the passing of confidential information. *Id.* Under this test, disqualification is warranted when: (1) it was objectively reasonable for the first party who claims to have retained the expert witness to conclude a confidential relationship existed between that party and the expert; and (2) whether the first party disclosed confidential or privileged information. *Id.* The party seeking disqualification bears the burden of proving both elements, and disqualification is "likely inappropriate" if either inquiry yields a negative response. *Id.*

**III. Analysis**

A.  Plaintiff's Motion for Partial Summary Judgment on Waiver of Defenses

Plaintiff argues for summary judgment on the grounds that Defendant should be barred from raising additional defenses and bases for denying the September 20, 2005 claim not included in its November 4, 2005 Response Letter.  As support for this argument, Plaintiff points to *National Union Fire Ins. Co. v. Bramble,* 879 A.2d 101 (Md. 2005), in which a Maryland state court granted summary judgment on the basis that a surety failed to answer its claim within the period proscribed by the bond agreement.[2]  While *National Union* is not controlling on this Court, it is persuasive, and the crux of that case, as well as this one, is the plain meaning of the language contained in the bond agreement.

The "plain meaning rule" of contract is a long-standing principle of Virginia contract law.  Under this doctrine, when an agreement is "complete on its face, [and] is plain and unambiguous in its terms," the court is bound to interpret meaning within the four corners of the document itself, without the consideration of parol evidence. *Virginia Elec. and Power Co. v. Northern Virginia Reg. Park Auth.,* 618 S.E.2d 323, 326 (Va.

---

[2]There is no controlling Virginia precedent governing this particular issue, so Plaintiff looks to a Maryland decision for guidance.  However, Virginia precedent agrees with the Maryland Court that the plain meaning rule applies to contracts, including surety contracts.

2005) (quoting *Berry v. Klinger,* 300 S.E.2d 792, 796 (Va. 1983). For surety bonds, any ambiguities in the interpretation of the bond are to be construed against the drafter. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1466 (4th Cir. 1991).

The Maryland Court of Appeals followed this same principle of construction in *National Union,* holding that it would "not be consistent with the plain meaning of the provisions...to permit the sureties to dispute a claim in its entirety through inaction," and that "to construe the language in a manner favorable to the party whose interests are protected by the bond is proper." *See* 879 A.2d at 110-11.  The Court also rejected the validity of the "reservation of rights" clause in the defendant's letter, stating that the 45 day period was in place to prevent sureties from disputing the claim *ad finitum* through inaction. *Id.* at 111.  Finally, the Maryland court held that because the sureties were required to delineate which portions of the claims were disputed and failed to do so, the entire claim was undisputed and the sureties were required to pay. *Id.*

The Maryland court did not address the other issue presented in Plaintiff's motion--whether the failure to address specific *legal* defenses renders them waived when other issues are addressed.  While *National Union* did specifically discount

8

"blanket waivers" and the logic of the case supports Plaintiff's position that *bases for challenging amounts disputed* are deemed waived if not included in the response letter, neither *National Union,* nor any other case cited by the Plaintiff supports the notion that all *legal defenses* (such as statute of limitations or collateral estoppel) must be raised in a pre-litigation response letter or be deemed waived.

This Court finds *National Union* persuasive. Following the *National Union* line of reasoning, Defendant should not be allowed to rely upon a "reservation of rights" clause to delay offering disputes to Plaintiff's claim. Plaintiff's claims are disputed as they were in the November 4, 2005 letter, and other bases for challenging the amount in question are waived. In this case, the payment bond agreement specifically states that following the proper filing of a claim, the surety shall:

> Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

*See* Payment Bond at 6.1. This language is, as Plaintiff argues, *identical* to the contractual language examined in *National Union. See National Union,* 879 A.2d at 110. Seaboard's response letter, dated November 4, 2005, disputed: 1) Casey's entitlement to payment for delays under Article 5 of the subcontract if RBI is not paid by ODEC; 2) the amounts and calculations claimed with

respect to deductive change orders and alleged payments; and 3) entitlement to interest and attorney's fees.  Seaboard did not raise any other defenses or grounds for denial, but the Seaboard letter also included a "reservation of rights" clause, stating that Seaboard:

> continues to reserve all rights and defenses that it or RBI may have at law, equity, or under the bond.  This reservation includes, without limitation, all defenses that may be available under any applicable notice or suit limitation provision, as well as all other defenses that may be identified or which may be developed during Seaboard's further review of [the] claim.

Therefore, the Court should grant summary judgment with respect to the waiver of additional bases for disputing the claim, and limit Defendant to those bases raised in the reply letter. However, neither the contract, nor *National Insurance* addresses the waiver of *legal defenses*, and such defenses should not be deemed waived because they were not included in a response letter prior to any litigation.  Therefore, even though this Court is inclined to follow *National Insurance* with respect bases for disputing claims, doing so will not bar any *legal* defenses from being raised.  Therefore, Plaintiff's motion will be granted in part and denied in part.

    B.   Timeliness of Suit

Defendant has filed a cross-motion for summary judgment alleging that Plaintiff's suit is barred because it was filed

beyond the contractual limitations period.  Defendant points to the contractual limitations period, described directly in the bond contract:

> no suit or action shall be commenced by a Claimant under this Bond...after the expiration of one year from the date of (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment was furnished by anyone under the construction contract, whichever of (1) or (2) first occurs.

*See* Payment Bond at 11.  Defendant argues that the suit should be time barred, pursuant to the contractual limitations period, because (1) suit was filed more than one year after the first claim letter was sent to Seaboard; and (2) suit was filed more than one year after the last work was done on the contract.  This Court will deny Defendant's cross-motion on both counts, for the following reasons.

Under Virginia law, parties to a contract may contractually fix their own limitations period, even if the period agreed upon is shorter than that prescribed by statute, so long as the time agreed is not unreasonably short or contrary to public policy.  *Commercial Construction Specialties, Inc. v. ACM Construction Management Corp.,* 405 S.E.2d 852, (Va. 1991). While the bond provides a one-year limitations period, the language of the bond itself is silent regarding multiple claims.  Under Virginia law, any ambiguities in the interpretation of a bond

11

must be construed against the party drafting the bond. *Fayetteville Investors,* 936 F.2d at 1466.

Two claim letters were sent by Casey to Seaboard in this case, one on June 9, 2004, and another on September 20, 2005. Although Casey has brought this action on the rejection of the September claim, Defendant argues that the limitations period began to run with the receipt of the first claim letter in 2004. The bond language itself, however, does not forbid multiple claims against the surety, nor does it specify that the expiration of the limitations period for one claim bars another. Under Virginia law, the absence of language forbidding multiple claims must be construed against Seaboard, as the drafter of the bond. Therefore, the limitations period will be measured from Casey's final September 20, 2005 claim letter (upon which this action was initiated), not the June 2004 letter.[3] There is thus no dispute of material fact that the complaint was filed within a year of Seaboard's notice of claim.

There remains a dispute of material fact as to whether action was filed within one year of "the last work completed." Plaintiff argues that both Casey and Teton returned to the job in August 2005 to work on the *original contract*, while Defendant argues that a new and different "implied in fact" contract was

---

[3] According to Defendant's witness, Alice McNamara, Casey had "not perfected [a] bond claim" by filing the 2004 letter. This testimony further supports that the final claim, which is at issue in this case, was filed in September 2005.

formed in August 2005. This Court previously denied summary judgment on this issue on April 10, 2006. Since that time, neither Plaintiff nor Defendant has presented sufficient evidence to alter the prior holding that a dispute of material fact remains regarding this issue. The letters from VBS to Casey and Teton and the revised Strickland declaration only add to the factual dispute about the nature of the contract work performed in 2005. Therefore, summary judgment remains inappropriate on this ground. For the foregoing reasons, Defendant's cross-motion for partial summary judgment will be denied on this ground, and Plaintiff's motion for summary judgment will be denied on this ground.

### C.  Collateral Estoppel

Plaintiff next argues that collateral estoppel should bar Defendant's challenge of Judge Spencer's findings of fact and conclusions of law in the ODEC/RBI litigation. Collateral estoppel may be asserted when the party seeking to invoke the doctrine shows by a preponderance of the evidence:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Whitley v. Commonwealth,* 538 S.E.2d 296, 299 (Va. 2000) (citing *Glasco v. Ballard,* 452 S.E.2d 854, 855 (Va. 1995).  In this case, the prior litigation for which collateral estoppel is being invoked by Plaintiff is the litigation between ODEC and RBI.  Because both Plaintiff and Defendant have conceded that final judgment has not been entered against RBI, collateral estoppel is not available.[4]

### D. Article 5(G) of the Contract

Plaintiff next argues for summary judgment to bar the use of Article 5(g) of the subcontract as a defense, on the grounds that Seaboard is prohibited, by applicable Pennsylvania law[5], from relying on the contract language as a "no damages for delay" defense.  Plaintiff also argues for summary judgment to bar the use of Article 5(g) as a "pay when paid"[6] clause, on the grounds that use of such defense by a surety is forbidden under

---

[4] Because no final judgment was entered in the underlying action, this Court does not reach the merits of the additional grounds for collateral estoppel.  However, even if a final judgment were made, the federal collateral estoppel mutuality standard (for which Plaintiff argues) would be inapplicable.  Virginia law is applicable in this case, and there is no mutuality of the parties as required by Virginia law.  *See Waters v. Commonwealth,* 600 S.E.2d 579, 581 (Va. 1987); *Selected Risks Ins. Co. v. Dean,* 355 S.E.2d 579, 581 (Va. 1987)(expressly rejecting the modern trend to abrogate the mutuality requirement).

[5] Article 24 of the subcontract provides that subcontracts are to be interpreted, governed, and enforced under the laws of the Commonwealth of Pennsylvania.

[6] A "pay when paid" clause is one in which the general contractor is not required to pay the subcontractor for work until the general contractor itself is paid.

14

Virginia law.  The contract (as modified by the June 12, 2003 addendum) specifically states:

> Subcontractors shall not be entitled to any increase in the Subcontract Price or to damages or additional compensation as a consequence of such delays or interference except for substantiated direct costs...and then only to the extent of amounts that Contractor, on behalf of Subcontractor, recovers from Owner or other subcontractors for such delay and interference.

### i.  No Damages For Delay Defense

Under Pennsylvania law, exculpatory provisions in a contract cannot be raised as a defense when there is an affirmative or positive interference by the owner (or general contractor) with the contractor's work, or there is failure to act in some essential manner necessary to the prosecution of the work. *Gasparini Excavating Co. v. Pennsylvania Turnpike Commission,* 187 A.2d 157, 162 (Pa. 1963).  Affirmative interference has been found by Pennsylvania courts in several situations factually similar to that between RBI and Casey. *See, e.g., Gasparini,* 187 A.2d at 476 (when formal notice was given to the contractor to begin work when owner know that work site was not ready); *Commonwealth of Pennsylvania Dept. of Highways v. S.J. Groves & Sons Co., et al.,* 343 A.2d 72, 77 (Pa. 1975) (where owner failed to advise contractor it would not have access to certain areas, and thus increasing man hours and disrupting production); *Coatesville Contractors & Engineers, Inc. v. Borough*

*of Ridley Park,* 506 A.2d 862, 868 (Pa. 1986) (for failure to have lake drained prior to excavation work).

In this case, Plaintiff argues that there is no dispute of material fact regarding the delays caused by the general contractor because the issues were resolved in the ODEC/RBI litigation.  However, the ODEC findings of fact themselves raise a dispute regarding delays Casey may have caused independent of interference by RBI.  The ODEC findings mention various delays that may have been caused by Casey, and not RBI.  Therefore, a question of fact remains and summary judgment is inappropriate at this time.  Accordingly, the Court will deny Plaintiff's motion with respect to barring the use of Article 5(g) as a "no damages for delay" defense.

### ii.  Pay When Paid Defense

A surety cannot assert its principal's defense based on "pay when paid" language in the subcontract when the "pay when paid" provision is not expressly incorporated into the bond agreement. *Moore Brothers Co. v. Brown & Root, Inc.,* 207 F.3d 717, 723 (4th Cir. 2000).  In this case, the language "only to the extent of amounts that Contractor, on behalf of Subcontractor, recovers from Owner or other subcontractors for such delay and interference" appears, as a "pay when paid" provision in the subcontract, but not in the bond agreement. Therefore, this defense is unavailable as a matter of law, and

Plaintiff's motion for partial summary judgment will be granted with respect to the "pay when paid" defense.

### E. Lack of Notice

Plaintiff argues for summary judgment on the ground that undisputed facts show proper notice was given to Defendant, and therefore a lack of notice defense should be unavailable. Under Pennsylvania law, requirements for providing written notice for change orders are set aside when the conduct of one party caused the other party to reasonably conclude payment would be made. *Universal Builders v. Moon Motor Lodges,* 244 A.2d 10, 15 (Pa. 1968). In such a case, Pennsylvania law implies a promise to "pay for extras." *Id.*

In this case, Casey put RBI on notice through email, written and verbal communications, and claims documents regarding the existence of rock, problems with the drainage system, access roads, and other forms of delays being experienced. Plaintiff further demonstrated, through affidavit facts, that RBI was aware of additional work needed to accommodate these various issues, and directed Casey to perform the extra work. Specifically, RBI requested that Casey submit a claim for extra rock costs, which it passed on to ODEC. Defendant has offered no evidence or counter-affidavits to rebut Casey's evidence of notice given to RBI. Fourth Circuit precedent dictates that, in responding to a dispositive motion "failure of a litigant to file counter-

17

affidavits may be treated as a conscious waiver." *Morrissey v. William Morrow & Co.,* 739 F.2d 962, 966 (4th Cir. 1984). Therefore, as a matter of law, summary judgment is appropriate, and Plaintiff's motion will be granted with respect to the lack of notice defense.

F.  Liquidated Damages

Liquidated damages were dismissed (*see* Motion to Dismiss, 7/27/06), but Seaboard was given leave to amend in order to seek actual damages.  There are new grounds for damages presented in Defendant's Amended Counterclaim, as well as evidence proffered by expert witnesses and affidavit facts. There remains a genuine dispute of fact regarding actual damages, however the Court's earlier holding with respect to liquidated damages should remain undisturbed.

G.  Motion to Disqualify Plaintiff's Expert

Defendant Seaboard argues that Plaintiff's expert, Michael Jaspers, should be disqualified as an expert witness. Federal courts have the discretionary power to disqualify expert witnesses in certain circumstances. *Wang Laboratories, Inc. v. Toshiba Corp.*, 762 F.Supp. 1246, 1248 (E.D. Va. 1991).  Virginia has adopted a two-prong test to determine whether or not to disqualify an expert witness obtained by another party, based on the passing of confidential information. *Id.*  Under this test, disqualification is warranted when: (1) it was objectively

reasonable for the first party who claims to have retained the expert witness to conclude a confidential relationship existed between that party and the expert, and (2) whether the first party disclosed confidential or privileged information. *Id.* The party seeking disqualification bears the burden of proving both elements, and disqualification is "likely inappropriate" if either inquiry yields a negative response.  *Id.*

In this case, nothing alleged by Defendant indicates a confidential relationship between Mr. Jaspers and Seaboard, let alone the passing of confidential knowledge to Mr. Jaspers. Furthermore, Seaboard's attempt to impute a confidential relationship on Mr. Jaspers is without merit.  Defendant appears to infer a firm-wide imputation of conflict akin to that of rules governing attorney-client conflicts.  However, several cases cited by Plaintiff distinguish the expert exclusionary rules from those of attorney-client rules and indicate a lower standard. *See, eg., Cordy v. Sherwin-Williams Co.,* 156 F.R.D. 575, 580 (D.N.J. 1994).  Defendant also fails to offer facts which link Mr. Jasper to any confidential information passed between RBI and Navigant.  Therefore, Defendant's motion will be denied.

### IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be **denied** with respect to waiver of defenses not included in the response letter, timeliness of suit,

collateral estoppel, and waiver of Article 5(g) "no damages for delay" defense, but **granted** with respect to waiver of raising additional grounds for denial, preclusion of liquidated damages, exclusion of the "pay when paid" defense, and lack of notice. Defendant's cross-motion for partial summary judgment and motion to exclude expert witness will both be **denied.**


October 2, 2006                     _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE