IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CASEY INDUSTRIAL, INC.      )
                            )
          Plaintiff,        )
                            )        1:06cv249(JCC)
          v.                )
                            )
SEABOARD SURETY CO.         )
                            )
          Defendant.        )

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff's motion for clarification and motion for leave to file second motion for summary judgment.  For the reasons stated below, the Court will clarify the October 2, 2006 Memorandum Opinion and deny Plaintiff's motion for leave.

### I. Background

Plaintiff Casey Industrial, Inc. ("Casey") has filed this action upon a payment bond issued by Defendant Seaboard Surety Company ("Seaboard") in favor of Ragnar Benson, Inc. ("RBI").  RBI, a general contractor, entered into a contract with Marsh Run Generation, LLC[1] for the construction of an electrical power generation facility in Remington, Virginia.  RBI then

---

[1]Effective April 30, 2003, Marsh Run Generation transferred all of its assets to Old Dominion Electric Cooperative ("ODEC"), which became the new owner of the project and the party under contract with RBI.

1

retained Casey as a subcontractor in two separate subcontracts for concrete construction services and underground electrical work.  Seaboard, as surety, issued a payment bond on behalf of RBI, as principal, for the protection and payment of subcontractors working on the project.

According to the allegations of Casey's complaint, Casey performed its services under the two subcontracts in a timely, workmanlike manner.  Casey also performed additional work beyond the scope of the subcontracts and gave proper notice of claims for compensation.  Nevertheless, Casey did not receive payment in full for the work it performed at the project.  On February 10, 2006, Casey filed a two-count complaint against Seaboard in the Circuit Court for Fauquier County, claiming breaches of contract and asserting a quantum meruit theory in the alternative.  Seaboard promptly removed the action to this Court.

As alleged by Casey, the claim arose from various delays that occurred at the fault of RBI, including failure to install the drainage system and access road, which led to Casey's demobilization in May, 2004.  At that time, Casey still had work remaining on the project, but on December 23, 2004 ODEC terminated the general contract with RBI, and placed Seaboard on notice of its obligations to complete the contract pursuant to Seaboard's Performance Bond.  Seaboard entered into a takeover agreement with ODEC.  VBS and Delta acted as completion

2

contractors to complete the project.  VBS demanded Casey's return to the job to fulfill its subcontract obligations.  VBS initially demanded that Casey sign a subcontractor hold agreement, which Casey never signed.  Casey nonetheless did return to the job. VBS also requested that Teton Industrial ("Teton") return to the job, which Teton did as well in July/August of 2005.

During the course of Casey's performance, Casey informed RBI of increased costs, claims, and delays, and prepared a claim for RBI to present to ODEC regarding excavation of rock. Casey also provided Seaboard with a notice of a claim under the Payment Bond on June 9, 2004.  On September 20, 2005, Casey presented a Request for Equitable Adjustment ("REA") cataloguing the historical claims and presenting Casey's overall requested adjustment.  Seaboard returned a letter on November 4, 2005 rejecting the claim.

ODEC filed suit against RBI, and RBI filed for Chapter 11 Bankruptcy on October 14, 2005, during a bench trial.  On October 16, 2005 ODEC also filed suit against Seaboard in the same court, and the suit was stayed on April 18, 2006, pending the outcome of the action against RBI.  On August 4, 2006, Judge James Spencer of the United States District Court for the Eastern District of VA issued a 107 page Findings of Fact and Conclusions of Law (ODEC Order).  In these findings of fact, Judge Spencer concluded that while RBI failed to provided adequate management,

3

coordination, and supervision of Casey's work, Casey's work had "numerous quality problems" including defective concrete pours for the GSU #1 foundation and the Administration Building slab. (*Old Dominion Elec. Co-op v. Ragnar Benson, Inc.,* C.A. No. 3:05cv34 at ¶ 249-253 (E.D. Va. August 4, 2006)).  Judge Spencer also concluded that Casey and RBI's failures to properly staff and schedule the project resulted in delays for other portions of the project. (*Id.* at ¶ 254).  Furthermore, while finding RBI's mismanagement of Casey largely at fault in straining the business relationship between Casey and RBI, Judge Spencer also found that Casey delayed performance of the underground electrical work, underground conduits and Trenwa trenches, and incorrectly installed the underground conduit for the grounding grid.  (*Id.* at ¶ 257-258).  On August 25, 2006, Plaintiff filed a motion for partial summary judgment on 1) waiver of defenses not included in Defendant's November 2005 response letter; 2) timeliness of suit; 3) collateral estoppel; 4) defenses pursuant to Article 5(g) of the subcontract; 5) lack of notice defense; 6) Defendant's new arguments for damages.  On September 8, 2006, Defendant filed a cross-motion for summary judgment on 1) timeliness of suit; 2) defenses pursuant to Article 5(g) of the subcontract.

On October 2, 2006, this Court issued a Memorandum Opinion addressing the cross-motions for summary judgment, granting Plaintiff's motion in part with respect to waiver of

4

defenses not included in Defendant's November 2005 response letter and preclusion of liquidated damages.  Plaintiff then filed a motion to clarify the Court's October 2, 2006 Memorandum Opinion, motion for leave to file a new motion for summary judgment.  These motions are currently before the Court.

## II. Standard of Review

Local Rule 56(A) states that motions for summary judgment shall be filed within a reasonable time of trial, so as to permit reasonable time for the court to hear arguments and consider the merits.  Local Rule 56(C) further requires that "a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment" without leave of court.  This language was also included in the Court's Rule 16(B) Scheduling Order.

## III.  Analysis

### A.  Motion for Clarification

#### i.  Waiver of Bases for Dispute

Plaintiff and Defendant have moved the Court to clarify its October 2, 2006 Memorandum Opinion with respect to waiver of bases for dispute not included in the November letter.  Finding *National Union Fire Ins. Co of Pittsburgh, PA v. David Bramble,* 879 A.2d 101 (Md. 2005) persuasive, and following its line of reasoning, the Court found that Defendant was required by the

5

plain language of the contract to include in its response letter (1) the amounts disputed, and (2) the bases for challenging the amounts in dispute.  Based on this plain language, the Court determined that Plaintiff's claims are disputed as they were in the November 4, 2005 letter, and other bases for challenging the amount in question are waived.  Plaintiff and Defendant have come to disagreeing interpretations of the Court's October 2, 2006 Memorandum Opinion with respect to waiver of bases for dispute.  Plaintiff has interpreted this clause to mean a waiver of any "factual defenses", whereas Defendant has interpreted it to mean waiver of only contractual defenses.  The Court hereby clarifies its prior opinion as follows.

        *National Union* says, quite clearly, that a Surety is not allowed to delay raising reasons why it should not have to pay a surety bond as a lawsuit progresses.  *National Union,* 879 A.2d at 111-12.  This Court remains persuaded by the language of *National Union,* which stated that in that case, like this one, the surety contract did not "simply require that the sureties state which portions of the claim are disputed and which are not; they must also delineate *the grounds underlying the dispute*." *Id.* at 110.  Relying upon the logic of *National Union,* this Court held that to make exception would contradict the plain meaning of the contract.

6

Although in this case, the Defendant surety did respond, it was required by the contract to delineate the portions of the claim disputed and the bases for dispute.  The payment bond agreement specifically states that following the proper filing of a claim, the surety shall:

> Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and the basis for challenging any amounts that are disputed.

*See* Payment Bond at 6.1.  This language is, as noted in the October 2, 2006 Memorandum Opinion, *identical* to the contractual language examined in *National Union. See National Union,* 879 A.2d at 110.  Seaboard's response letter, dated November 4, 2005, disputed: (1) Casey's entitlement to payment for delays under Article 5 of the subcontract if RBI is not paid by ODEC; (2) the amounts and calculations claimed with respect to deductive change orders and alleged payments; and (3) entitlement to interest and attorney's fees.  Seaboard followed up with an additional letter on November 23, 2005, in which it confirmed a dispute of "conflicting information concerning the adjusted subcontract values for both contracts, the direct cost and indirect impact portions of Casey's claim," and reiterated its claims for contractual and other defenses.  Seaboard thus raised dispute with the claims against both the 0902-J Concrete and 0902-O

7

Electrical subcontracts, and delineated a number of bases for dispute within the contractual period.

The Court's prior ruling was that, based on *National Union* and Virginia's plain meaning rule, Defendant was required to delineate which portions of the contract were disputed, and the bases for dispute in the 45-day period (which it did). However, the contract did not permit Seaboard to raise any additional bases for dispute after the 45-day period. As noted in the October 2, 2006 Memorandum Opinion, this does not mean that Defendant is precluded from raising legal defenses, nor is Defendant precluded from conducting discovery and, in turn, raising any facts that support or defend the bases for contention raised in the contractual period.

Defendant is precluded, however, from developing new bases for dispute outside the 45-day contractual period. The language of the contract was clear and unambiguous that Seaboard was required to give the amounts and bases in dispute within the 45-day period. Under Virginia's "plain meaning rule" of contract, when an agreement is "complete on its face, [and] is plain and unambiguous in its terms," the court is bound to interpret meaning within the four corners of the document itself, without the consideration of parol evidence. *Virginia Elec. and Power Co. v. Northern Virginia Reg. Park Auth.,* 618 S.E.2d 323, 326 (Va. 2005)(quoting *Berry v. Klinger,* 300 S.E.2d 792, 796 (Va.

8

1983). For surety bonds, any ambiguities in the interpretation of the bond are to be construed against the drafter. *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1466 (4th Cir. 1991).

In this case, Seaboard was the drafter of the bond, so any ambiguity must be construed against it. While Defendant has characterized this construction as "draconian," to hold otherwise would contradict Virginia law. For this reason Defendant's request that this Court adopt the ruling of a Massachusetts Superior Court decision, *Methuen Constr. Co. Inc. v. The Austin Co.,* Superior Court C.A. No. 04-1207-G (September 1, 2006) over *National Union* is unconvincing. While *National Union* holds true to the plain meaning doctrine, the Massachusetts case suggests that the Court should not follow the plain language of the contract, but should make judgments on its own as to the reasonable time frame for disputing a claim in "complex construction cases." *Id.* at 4. This Court must follow the plain language, and deem any bases for dispute not raised in the contractual period as waived.

### ii.  Liquidated Damages

Plaintiff has moved the Court to clarify its October 2, 2006 Order with respect to Seaboard's claims for actual damages.

9

The Court upheld a prior ruling to preclude liquidated damages, and the opinion stated:

> Liquidated damages were dismissed (*see* July 27, 2006 Memorandum Opinion), but Seaboard was given leave to amend in order to seek actual damages.  There are new grounds for damages presented in Defendant's Amended Counterclaim, as well as evidence proffered by expert witnesses and affidavit facts.  There remains a genuine dispute of fact regarding actual damages, however the Court's earlier holding with respect to liquidated damages should remain undisturbed.

(October 2, 2006 Memorandum Opinion).  Plaintiff has misconstrued this ruling to mean that the Court dismissed Seaboard's claim for recovery of 1.8 million dollars which are now claimed as actual damages.  The Court held that while Defendant is contractually precluded from seeking liquidated damages, as ruled upon before, the Court did not pass summary judgment on the issue of actual damages.  This ruling was based on the surety agreement itself, and the Court's prior holding with respect to that agreement that:

> [i]n light of other provisions in the subcontract, however, the Court cannot agree with Casey's absolutist position.   For instance, Article 12 of the subcontracts clearly contemplates that the Contractor would have remedies other than liquidated damages in the event of Seaboard's delay.

(July 27, 2006 Memorandum Opinion).  The Court only reinforced its prior holding with respect to liquidated damages, but

10

declined to rule on the issue of actual damages, which includes the $1.8 million dollar claim. Seaboard thus remains free to pursue any damages that they can establish as "actual," and a dispute of fact remains as to the $1.8 million dollar claim Seaboard made after amending its complaint can be proven as actual damages.

####    B.  Motion for Leave to File Summary Judgment for Critical Path Delays

Plaintiff moves this Court for leave to file an additional motion for summary judgment on the issue of critical path delays.  Plaintiff previously filed a motion for partial summary judgment on this same issue, prior to the completion of discovery.  That motion was denied because issues of factual dispute remained based on the record before the Court.[2]  Plaintiff now argues that since that time, upon the completion of discovery, the 30(b)(6) testimony of RBI representatives eliminates the prior disputes of material fact, and conclusively establishes that Casey caused no critical path delays to the project.

Plaintiff has not provided any new evidence in the form of deposition testimony to the Court in support of this position. Defendant maintains that a genuine dispute of material fact

---

[2]While the Court did find that under applicable Pennsylvania law, courts have found actual interference in similar cases, the evidence on record was insufficient for the Court to pass ruling on summary judgment.

exists, relying upon deposition testimony of William Manginelli,
and the recent deposition of William Jaspers, to which the Court
assumes that Plaintiff refers.  In that deposition, Mr. Jaspers
stated he was unable to determine if Casey delayed the critical
path of the project, because he only analyzed Plaintiff's portion
of the project, rather than the entire project. (Jaspers Tr. at
124:14-125:14).  Considering the inconclusiveness of the
testimony, this deposition does little to resolve the dispute of
material fact that existed prior to the taking of this deposition
due to the expert report of William Manginelli and the ODEC
findings themselves.  Therefore, the Court sees no reason why it
should grant leave to the Plaintiff to file an additional motion
for summary judgment on an issue the Court has already decided.
Accordingly, Plaintiff's motion for leave will be denied with
respect to this ground.

### C. Supplemental Responses to Interrogatories

Plaintiff argues that Defendant's Supplemental Answers
to Casey's First Set of Interrogatories, filed on September 29,
2006 are untimely, and raise new damage claims.  Plaintiff moves
the Court for leave to file a Second Motion for Summary Judgment
to dismiss these claims.  Defendant argues that the Supplemental
Answers were made in accordance with Federal Rule of Civil
Procedure 26(e)(2), which requires parties to amend answers to
interrogatories if it is learned that a previous response was

incomplete.  Defendant further argues that the issue was raised September 22, 2006 during the deposition of Alice McNamara, and has included the portions of the depositions where Ms. McNamara expressed a need to amend the Interrogatory Answers.  Once again, the Court sees no reason why leave is warranted to file an additional motion for summary judgment on this issue.  Accordingly, Plaintiff's motion will be denied on this ground.

    D.  Liquidated Damages as Actual Damages

        Plaintiff asks for leave to file a second motion for summary judgment on the issue of liquidated damages from the prior litigation being counted as actual damages.  Once again, Plaintiff has already raised this issue on motion for summary judgment, and the Court decided that while Seaboard was precluded from seeking liquidated damages as a matter of law, there remained a factual dispute as to the actual damages incurred.

        In the July 27, 2006 Memorandum Opinion, this Court held:

> [R]eview of Casey's subcontracts reveals that the agreements obligated Casey to perform its work in accordance with the EPC Contract and RBI's completion schedule. Nevertheless, neither subcontract contains any language giving rise to liability for liquidated damages in the event of a delay. Article 21 to each subcontract, the incorporation clause, would have permitted liquidated damages pursuant to the terms of the EPC Contract, but the parties intentionally deleted those clauses.

13

> In light of other provisions in the
> subcontract, however, the Court cannot agree
> with Casey's absolutist position. For
> instance, Article 12 of the subcontracts
> clearly contemplates that the Contractor
> would have remedies other than liquidated
> damages in the event of Seaboard's delay...
>
> Accordingly, while the Court will grant
> Casey's motion to dismiss Seaboard's claim
> for liquidated damages, Seaboard will have
> leave to amend its counterclaim to seek
> actual damages.

*See* July 27, 2006 Memorandum Opinion.  In Seaboard's amended

counterclaim, evidence of delays as contemplated in the

subcontract were proffered by expert witnesses and affidavit

facts.  In the October 2, 2006 Memorandum Opinion, this Court

upheld the prior preclusion of liquidated damages, but, as

clarified in this Opinion, declined to grant summary judgment on

the issue of actual damages for delay, as expressed in the

contract.

Plaintiff has presented no new evidence other than an

allegation that, according to Seaboard's expert witness, any

delay on the part of Casey during the project would be irrelevant

because both Seaboard and RBI would be "capped on liquidated

damages at $4,747,596.73."  Regardless, a dispute of material

fact remains to this issue, as Seaboard has proffered evidence of

actual delay damages as specified in the contract.  The Court has

already determined summary judgment was inappropriate on the

14

issue of actual damages, and accordingly,  Plaintiff's motion for
leave will be denied as to this ground.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for leave
to file second motion for summary judgment will be denied, and
the Court's October 2, 2006 Memorandum Opinion is clarified to
hold: (1) new bases for disputing the claim not raised in the 45-
day contractual period are deemed waived, but Defendant is not
precluded from raising legal defenses or factual evidence which
supports the bases for dispute raised in the contractual period;
(2) summary judgment was granted with respect to the preclusion
of liquidated damages, but not with respect to any pass-through
damages that can be claimed as actual damages.  An appropriate
Order will issue.


October 25, 2006                _____/s/_____
Alexandria, Virginia                     James C. Cacheris
                                UNITED STATES DISTRICT COURT JUDGE

15